*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A25-0411**

Alex Sajady, et al.,
Appellants,

vs.

Tracy Sajady,
Respondent.

**Filed October 6, 2025
Affirmed in part, reversed in part, and remanded
Johnson, Judge**

Carver County District Court
File No. 10-CV-23-627

Matt Kezhaya, Kezhaya Law PLC, Minneapolis, Minnesota (for appellants)

Samuel M. Johnson, Skolnick, Bardwell & Johnson, P.A., Minneapolis, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Johnson, Judge; and Reyes, Judge.

**NONPRECEDENTIAL OPINION**

**JOHNSON**, Judge

Four siblings sued their mother, alleging that she stole cryptocurrency and certain items of personal property from them. The district court granted the defendant's motion to dismiss the complaint for failure to state a claim upon which relief can be granted. We conclude that the district court did not err by ruling that plaintiffs failed to state a viable

conversion claim with respect to the cryptocurrency. But we conclude that the district court erred by ruling that plaintiffs failed to state viable conversion and civil-theft claims with respect to the personal property. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

**FACTS**

On a motion filed pursuant to rule of civil procedure 12.02(e), the relevant facts generally are limited to the facts alleged in the complaint. *See Hansen v. U.S. Bank N.A.*, 934 N.W.2d 319, 325 (Minn. 2019); *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 552-53 (Minn. 2003). In this case, however, both parties filed affidavits and exhibits with their motion papers. But the district court specifically stated that the only facts considered were the facts alleged in the complaint. *See* Minn. R. Civ. P. 12.02. Accordingly, our statement of the relevant facts is based solely on plaintiffs' complaint. *See Martens v. Minnesota Mining & Mfg. Co.*, 616 N.W.2d 732, 739 n.7 (Minn. 2000).

Tracy Sajady and Masood Sajady (also known as Mas) previously were married. Their marriage was dissolved in 2017. They had six children together. Four of their children now are adults.

In February 2023, Tracy's and Masood's adult children—Alex Sajady, Zak Sajady, Emme Sajady, and Zeus Sajady—commenced this action against Tracy. The complaint alleges, in pertinent part, as follows:

> 10. Over the years, Mas gave his children various gifts of cash, precious metals (coins, gold, silver, and platinum), and other valuables ("Valuables") worth well over $385,000, in an amount to be proven at trial.

2

11. The Valuables were owned exclusively by Plaintiffs and the Minor Children, which is evidenced by the fact the Valuables were not listed as marital assets in Tracy and Mas's divorce decree.

12. Tracy knew of the existence of the Valuables and knew that they belonged to her children.

13. Sometime after Tracy divorced Mas in 2017, Tracy entered Mas's house with the intention of taking the Valuables from her children.

14. Tracy went throughout Mas's home collecting the Valuables, some of which were hidden in a tube in the wall and a nondescript computer box.

15. Tracy secretly removed these Valuables from Mas's home and took them with her.

16. In the past year, Plaintiffs discovered that the Valuables were missing.

17. There was no sign that anyone broke into the home, so Plaintiffs wondered if their mother may have stolen the Valuables.

18. Alex confronted Tracy about whether she took the Valuables.

19. Tracy admitted she took the Valuables.

20. Tracy acknowledged that she used the Valuables to fund litigation against Mas.

. . . .

25. Over the years, Plaintiffs and the Minor Children received cryptocurrency as gifts and as payment for labor.

26. The fact that the children were minors required that the cryptocurrency be held in an account under an adult's name, so their cryptocurrency was held in a Coinbase account under Mas's name.

3

27.     Although the Coinbase account was held in Mas's name, the asset was the property of Plaintiffs and the Minor Children.

28.     Tracy knew this cryptocurrency was owned by her children.

29.     In 2021, in legal documents mailed from Hennepin County, Tracy garnished this Coinbase account to take the cryptocurrency owned by Plaintiffs and her Minor Children.

30.     Tracy took this action through her attorney, . . . who operates a law firm in Hennepin County.

The complaint asserts three causes of action: (1) conversion of both the cryptocurrency and the valuables, (2) civil theft of the valuables, and (3) replevin with respect to both the cryptocurrency and the valuables.

In lieu of answering the complaint, Tracy moved to dismiss on the ground that the complaint fails to state a claim upon which relief can be granted. *See* Minn. R. Civ. P. 12.02(e). In January 2025, the district court filed an order in which it granted Tracy's motion and dismissed the complaint, with prejudice. The district court dismissed all claims on the ground that plaintiffs did not sufficiently allege that they have cognizable property interests in both the cryptocurrency and the valuables. In addition, the district court dismissed the conversion and replevin claims with respect to the cryptocurrency on the ground that cryptocurrency is intangible and, thus, not personal property that can be the subject of a conversion claim. Furthermore, the district court dismissed the conversion and replevin claims with respect to the cryptocurrency on the ground that plaintiffs alleged that

4

Tracy obtained the cryptocurrency in a garnishment proceeding, which shows that she did not obtain the cryptocurrency without lawful justification. Plaintiffs appeal.

## DECISION

Appellants argue that the district court erred by granting Tracy's motion and dismissing the complaint.

A district court may grant a motion to dismiss if a complaint "fail[s] to state a claim upon which relief can be granted." Minn. R. Civ. P. 12.02(e). To state a claim for relief, a complaint need only "contain a short and plain statement of the claim showing that the pleader is entitled to relief." Minn. R. Civ. P. 8.01. "A claim is sufficient against a motion to dismiss for failure to state a claim if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014). In considering a motion to dismiss pursuant to rule 12.02(e), a district court must "consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Finn v. Alliance Bank*, 860 N.W.2d 638, 653 (Minn. 2015) (quotation omitted). In reviewing a district court's grant of a motion to dismiss under rule 12.02(e), an appellate court should "construe the complaint to allow the claim to go forward unless there is no way to construe the alleged facts—and the inferences drawn from those facts—in support of the claim." *Demskie v. U.S. Bank N.A.*, 7 N.W.3d 382, 386 (Minn. 2024) (quotation omitted). We apply a *de novo* standard of review to a district court's grant of a motion to dismiss pursuant to rule 12.02(e). *DeRosa v. McKenzie*, 936 N.W.2d 342, 346 (Minn. 2019).

Appellants make three arguments for reversal. First, they argue that the district court erred by ruling that they did not plead viable conversion and civil-theft claims on the ground that they did not allege cognizable property interests in both the cryptocurrency and the valuables. Second, appellants argue that the district court erred by ruling that they did not plead a viable claim of conversion of the cryptocurrency on the ground that cryptocurrency is intangible and, thus, not personal property that can be the subject of a conversion claim. Third, appellants argue that the district court erred by ruling that they did not plead a viable claim of conversion of the cryptocurrency on the ground that their allegations show that Tracy did not obtain the cryptocurrency without lawful justification. Appellants do not challenge the district court's dismissal of their replevin claim.

## I. Cryptocurrency

We begin by considering appellants' third argument. Conversion is defined as "an act of willful interference with the personal property of another, done, *without lawful justification*, by which any person entitled thereto is deprived of use and possession, and the exercise of dominion and control over goods inconsistent with, and in repudiation of, the owner's rights in those goods." *Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 585 (Minn. 2003) (emphasis added) (quotations, brackets, and citations omitted); *see also DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997); *Larson v. Archer-Daniels-Midland Co.*, 32 N.W.2d 649, 650 (Minn. 1948). The parties agree that the absence of lawful justification is an element of a conversion claim that must be proved by the plaintiff. We agree with the parties and adopt their shared premise. *See Christensen*, 658 N.W.2d at 585; *DLH*, 566 N.W.2d at 71; *Larson*, 32 N.W.2d at 650; *cf. Hoskin v. Krsnak*, ____ N.W.3d ____, ____,

6

2025 WL 2609549, *7 (Minn. Sept. 10, 2025) (holding that "motion to dismiss based on an affirmative defense may be granted only if the allegations in the complaint, construed in the plaintiff's favor, establish an unrebuttable defense").

The district court reasoned, in part, that appellants did not plead a viable conversion claim with respect to the cryptocurrency because they alleged that Tracy garnished the cryptocurrency, which "shows [Tracy] was not without lawful justification." The district court added that, if appellants wished to attack Tracy's garnishment of the cryptocurrency, "that issue should be challenged in Hennepin County," where Tracy and Masood's dissolution action and post-dissolution proceedings were venued.

On appeal, appellants challenge the district court's reasoning in two ways.

**A.**

Appellants first contend that they are not foreclosed from proving that Tracy acted without lawful justification because they have alleged that Tracy and her family-court attorney acted wrongfully by garnishing Masood's Coinbase account when Tracy knew that the cryptocurrency in the account was owned by appellants.

Appellants have cited no binding authority for the proposition that a creditor may commit the tort of conversion by initiating a garnishment proceeding to reach assets in an account titled in a debtor's name. Our own research indicates that the Minnesota appellate courts have not considered the viability of such a claim, let alone endorsed it.

In addition, appellants' argument is inconsistent with the decisions in *Savig v. First National Bank*, in which the plaintiffs brought a conversion claim (and three other claims) in federal district court based on a judgment creditor's garnishment of a bank account

jointly owned by a judgment debtor and her husband. *See* 781 N.W.2d 335, 337 (Minn. 2010). The federal district court certified three questions to the supreme court, including the question whether a judgment creditor may serve a garnishment summons on a joint bank account if fewer than all joint owners are judgment debtors. *See id.* In answering that question, the supreme court reasoned that "Minnesota Statutes § 571.71 gives broad authority to a creditor to begin the garnishment process by issuing a garnishment summons"[1] and that "[t]here are no restrictions in Minn. Stat. § 571.71 concerning the type of property that a creditor may seek to garnish when serving a summons." *Id.* at 339. The supreme court also reasoned that, because "joint account holders may contest the retention of funds from a joint account,"[2] and because the Minnesota Multiparty Accounts Act,

---

[1] A judgment creditor may initiate a garnishment proceeding by issuing a garnishment summons "at any time after entry of a money judgment in the civil action." Minn. Stat. § 571.71(3) (2024). The service of a garnishment summons may attach a debtor's "nonexempt disposable earnings"; "other nonexempt indebtedness, money, or other property due or belonging to the debtor"; and "other nonexempt intangible or tangible personal property of the debtor." Minn. Stat. § 571.73, subd. 3(1), (2), (3) (2024); *see also* Minn. Stat. § 571.72, subds. 2, 5 (2024).

[2] If the debtor is "a natural person," he or she is entitled to a "garnishment exemption notice," which must inform him or her that "[s]ome of your property may be exempt and cannot be garnished," must list some common exemptions, and must encourage the judgment debtor to "obtain legal advice" if the debtor has questions. Minn. Stat. § 571.72, subd. 8; *see also* Minn. Stat. § 571.912, subd. 1 (2024) (governing funds in financial institution). If the asset sought to be attached is exempt, the debtor may claim an exemption and request a hearing on the claimed exemption. *See* Minn. Stat. § 571.72, subd. 9(b); *Estate of Jones by Blume v. Kvamme*, 529 N.W.2d 335, 336-40 (Minn. 1995); *Anderson v. Kaliszewski*, No. 20-0175, 2020 WL 4932843, *2-3 (Minn. App. Aug. 24, 2020). One exemption allowed by law is "[t]he earnings of the minor child of any debtor." Minn. Stat. § 550.37, subd. 15 (2024); *see also* Minn. Stat. § 571.912, subd. 1. Also, the debtor may object and request a hearing on the ground that the asset sought to be attached does not belong to him or her. *See* Minn. Stat. § 571.72, subd. 9(b); *Village at Izatys Ass'n v. Jaskowick*, No. 09-1030, 2010 WL 10423, *1-2 (Minn. App. Jan. 5, 2010). In addition, a third party claiming ownership of the asset may intervene, assert an objection, and request

Minn. Stat. §§ 524.6-201 to -214 (2008), does not limit a judgment creditor's broad authority to serve a garnishment summons, it is not improper for a judgment creditor to serve a garnishment summons on a joint bank account. *Id.* at 340-41. The supreme court did not decide that the judgment creditor necessarily was entitled to all funds in the joint account; the court merely held that the judgment creditor was not required "to prove by clear and convincing evidence *prior to serving a summons* that the funds belong to the debtor." *Id.* at 341 (emphasis added). After the supreme court issued its opinion, the federal district court concluded that the plaintiffs' conversion claim failed as a matter of law on the ground that "there is no actionable state-law tort based on the garnishment" because the creditor "effected the garnishment in the manner prescribed by the state's highest court." *Savig v. First Nat'l Bank*, No. 09-132 JNE/LIB, 2011 WL 883642, *2 (D. Minn. Mar. 11, 2011). The *Savig* case indicates that a creditor is not obligated to refrain from serving a garnishment summons on a debtor's account if some or all of the assets in the account are or might be owned by someone other than the debtor.

We also find guidance in two supreme court opinions involving challenges to garnishments under different theories. In *Pow-Bel Construction Corporation v. Gondek*, 192 N.W.2d 812 (Minn. 1971), a debtor asserted a claim of abuse of process based on a creditor's initiation of a pre-judgment garnishment proceeding. *Id.* at 813. The jury found

a hearing. *See* Minn. Stat. §§ 571.72, subd. 9(b), 571.83 (2024); *August Ventures, LLC v. Gedney Foods Co.*, No. A23-1577, 2024 WL 3320880, *3-5 (Minn. App. July 8, 2024), *rev. denied* (Minn. Oct. 15, 2024); *see also Mannheimer v. Phinney*, 219 N.W. 765, 765-66 (Minn. 1928); *Conroy v. Ferree*, 71 N.W. 383, 384 (Minn. 1897); *Smith v. Barclay*, 55 N.W. 827, 828 (Minn. 1893); *North Star Boot & Shoe Co. v. Ladd*, 20 N.W. 334, 335 (Minn. 1884).

9

in favor of the debtor, but the district court granted the creditor's motion for judgment notwithstanding the verdict. *Id.* at 813-14. On appeal, the supreme court affirmed and reasoned, in part, that "if a dispute arose . . . as to who owned the funds, garnishment was not an improper ancillary proceeding to the main action." *Id.* at 814.

Similarly, in *Martin v. Cedar Lake Ice Company*, 177 N.W. 631 (Minn. 1920), a judgment debtor asserted a claim of malicious prosecution based on the defendants' pursuit of a default judgment and initiation of a garnishment proceeding to collect on the judgment. *Id.* at 631. The district court granted the judgment creditor's motion for judgment on the pleadings. *Id.* On appeal, the supreme court affirmed, reasoning in part that, to prevail, "the [debtor] must allege and prove a termination of the original proceeding in his favor." *Id.* The supreme court concluded by stating, "The attempt to collect a valid and unpaid judgment by garnishment may not be held wrongful or unlawful." *Id.* at 632.

Given these authorities, we conclude that a creditor does not act without lawful justification by serving a garnishment summons on a garnishee to reach assets in an account that is titled in a debtor's name.

**B.**

Appellants also contend that the district court erred by stating that they should have challenged Tracy's garnishment of the cryptocurrency in Hennepin County. Appellants challenge this part of the district court's order by asserting that Tracy and her family-law attorney were obligated to serve a garnishment summons on them but did not do so. Appellants do not cite any authority for that proposition. Our review of the garnishment statutes reveals that a creditor must serve a garnishment summons on a garnishee and must

10

serve a copy of the summons on the debtor. Minn. Stat. § 571.72, subds. 2, 4; *see also* Minn. Stat. §§ 571.911, 571.912, subd. 1. We are unaware of any requirement that a creditor serve a garnishment summons on a third party who may have an interest in a financial account titled in a debtor's name.

Thus, appellants have not identified any possibility that evidence might be produced, consistent with their theory, that would allow them to prove that Tracy acted without lawful justification when her family-law attorney garnished the cryptocurrency in Masood's Coinbase account. *See Walsh*, 851 N.W.2d at 602. Therefore, appellants have not stated a viable conversion claim with respect to the cryptocurrency. In light of that resolution of appellants' third argument, we need not consider appellants' first argument as it relates to the cryptocurrency or appellants' second argument.

## II. Valuables

We continue by considering appellants' first argument with respect to the valuables, that the district court erred by ruling that they did not plead viable conversion and civil-theft claims on the ground that they did not allege cognizable property interests in the valuables.

As stated above, a conversion claim may provide a remedy for the "willful interference with the personal property *of another*" or the deprivation of "use and possession" of property to which any other person is entitled. *Christensen*, 658 N.W.2d at 585 (emphasis added) (quotations, brackets, and citations omitted). Similarly, a person commits civil theft if the person "steals personal property *from another*." Minn. Stat. § 604.14, subd. 1 (2024) (emphasis added). Accordingly, to prevail on their claims of

11

conversion and civil theft, appellants must prove that they have cognizable property interests in the valuables. *See Minnesota Citizens Concerned for Life, Inc. v. Joint Revocable Trust Agreement of John Charais & Sveindis Charais*, No. A23-0960, 2024 WL 1714225, at \*10-11 (Minn. App. Apr. 22, 2024) (affirming dismissal of civil-theft claim for failure to allege property interest in funds in bank account); Minn. R. Civ. App. P. 136.01, subd. 1(c) (providing that nonprecedential opinions are "not binding authority" but "may be cited as persuasive authority").

The district court reasoned in part that courts are not bound by legal conclusions in a complaint when ruling on a motion to dismiss. The supreme court has so stated. *See Bahr v. Capella Univ.*, 788 N.W.2d 76, 80 (Minn. 2010); *Hebert v. City of Fifty Lakes*, 744 N.W.2d 226, 235 (Minn. 2008). But the supreme court has explained that legal conclusions are to be distinguished from factual conclusions. *Halva v. Minnesota State Colls. & Univs.*, 953 N.W.2d 496, 501 & n.2 (Minn. 2021). In addition, the supreme court has clarified that a conclusion in a complaint should not be characterized in a manner that is "inconsistent with our notice pleading standard, which permits short and general statements of fact and does not ask for detailed factual allegations." *Demskie*, 7 N.W.3d at 387 (quotation omitted). In this case, appellants' allegation that they are the exclusive owners of the valuables is more of a factual conclusion than a legal conclusion. *See id.*; *Halva*, 953 N.W.2d at 501 & n.2.

The district court also reasoned that appellants did not allege that Masood had made completed gifts by delivering and absolutely disposing of the valuables. *See Oehler v. Falstrom*, 142 N.W.2d 581, 585 (Minn. 1966). But appellants allege that "Mas gave his

12

children various gifts of cash, precious metals (coins, gold, silver, and platinum), and other valuables." In addition, appellants allege that the valuables were not listed as marital assets in Tracy and Masood's dissolution case, which, if true, would tend to show that the valuables are owned by appellants. The absence of more detailed allegations is not fatal to appellants' claims, and the allegation that the valuables were removed from Masood's home is not inconsistent with appellants' theory. Given the familial relationships, appellants conceivably could prove, for example, that the valuables were given to them but were stored at Masood's home pursuant to an agreement. Accordingly, we cannot say that there is "no way to construe the alleged facts—and the inferences drawn from those facts—in support of the claim." *See Demskie*, 7 N.W.3d at 386 (quotation omitted).

Thus, the district court erred by reasoning that appellants did not adequately plead conversion and civil-theft claims concerning the valuables. Therefore, we reverse and remand for further proceedings on appellants' conversion and civil-theft claims with respect to the valuables.

**Affirmed in part, reversed in part, and remanded.**